IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JERRY ALLEN O.,[1]                         3:19-cv-02080-BR

        Plaintiff,                   OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.


**KEVIN KERR**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR  97293
(503) 255-9092

       Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**DANIELLE R. MROCZEK**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2946

          Attorneys for Defendant

**BROWN, Senior Judge.**

     Plaintiff Jerry Allen O. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


                    **ADMINISTRATIVE HISTORY**

     On October 17, 2016, Plaintiff protectively filed his application for SSI benefits.  Tr. 15, 213.[2]  Plaintiff alleges a

_____

     [2] Citations to the official Transcript of Record (#12) filed by the Commissioner on May 6, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

disability onset date of October 7, 2016.  Tr. 15, 213.[3]
Plaintiff's application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on September 12, 2018.  Tr. 15, 29-54.  Plaintiff and a
vocational expert (VE) testified at the hearing.  Plaintiff was
represented by an attorney at the hearing.

On December 21, 2018, the ALJ issued an opinion in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 15-24.  Plaintiff requested review by the
Appeals Council.  On October 23, 2019, the Appeals Council
denied Plaintiff's request to review the ALJ's decision, and the
ALJ's decision became the final decision of the Commissioner.
Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On December 20, 2019, Plaintiff filed a Complaint in this
Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on December 19, 1967.  Tr. 22, 213.

---

[3]  Plaintiff previously applied for DIB and SSI benefits in
January 2013 and alleged a disability onset date of October 1,
2010.  Tr. 93.  In June 2015 another ALJ found Plaintiff was not
disabled and denied Plaintiff's application.  Tr. 90-113.
Plaintiff did not appeal that determination.

Plaintiff was 48 years old on his alleged disability onset date.
Tr. 22.  Plaintiff has at least a high-school education.
Tr. 22, 34.  Plaintiff has past relevant work experience as a
machine packager, cannery worker, and receiving checker.
Tr. 22, 35.

Plaintiff alleges disability due to diabetes, high blood
pressure, degenerative disc disease, neuropathy, right elbow and
shoulder problems, and left-knee problems.  Tr. 20, 114, 236.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 20-22.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than

one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012).  The court may not substitute its
judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA).  20 C.F.R. § 416.920(a)(4)(i).  *See also*
*Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.
2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§ 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.

§ 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in

the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also*
*Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.*
*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony
of a VE or by reference to the Medical-Vocational Guidelines (or
the grids) set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since October 17, 2016, Plaintiff's
application date.  Tr. 17.

At Step Two the ALJ found Plaintiff has the severe
impairments of bilateral knee degenerative joint disease;
degenerative disc disease of the lumbar and thoracic spine;
diabetes mellitus; plantar fasciitis; obesity; bilateral carpal-
tunnel syndrome, status post-release; history of left-leg
fracture; and obstructive sleep apnea.  Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically

determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1.  Tr. 18.  The ALJ found Plaintiff has the RFC to
perform light work with the following limitations:  must be able
to alternate between sitting and standing for five minutes every
30 minutes while remaining at a workstation; cannot use foot
controls with the left leg; can occasionally push and pull;
cannot climb ladders, ropes, or scaffolds; can occasionally
climb ramps and stairs; can occasionally stoop, but cannot
crouch more than 15 percent of the time; cannot kneel or crawl;
can occasionally reach overhead; can frequently handle with his
right arm; must avoid moving or dangerous machinery; and must
avoid work at unprotected heights.  Tr. 19.

At Step Four the ALJ concluded Plaintiff is unable to
perform his past relevant work.  Tr. 22.

At Step Five the ALJ found Plaintiff can perform other jobs
that exist in the national economy such as mail clerk, office
helper, and parking-lot attendant.  Tr. 23.  Accordingly, the
ALJ found Plaintiff is not disabled.  Tr. 23.

## **DISCUSSION**

Plaintiff contends the ALJ erred when he (1) failed to

provide legally sufficient reasons for discounting Plaintiff's
subjective symptom testimony; (2) failed to provide legally
sufficient reasons for rejecting the medical opinion of Marianne
Clinton, M.D., Plaintiff's treating physician; (3) failed to
include in Plaintiff's RFC the limitations found by Martin
Kehrli, M.D., and Chandra Basham, M.D., state agency non-
examining physicians; and (4) failed to include in Plaintiff's
RFC a requirement to use a cane.

I.    **The ALJ did not err when he discounted Plaintiff's
      testimony.**

     Plaintiff contends the ALJ erred when he failed to provide
legally sufficient reasons for discounting Plaintiff's
subjective symptom testimony.

     **A.    Standards**

          The ALJ engages in a two-step analysis to determine
whether a claimant's testimony regarding subjective pain or
symptoms is credible.  "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  *Garrison v.
Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter
v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The
claimant need not show his "impairment could reasonably be

10 - OPINION AND ORDER

expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.  Analysis**

Plaintiff testified he cannot stand for long periods, he cannot walk for "even five minutes at the most," and his

knees "give out and dislocate." Tr. 37.  He also stated his
back "hurts all the time," which makes it difficult for him to
sit.  Tr. 39.  Plaintiff testified he has difficulty with his
hands and arms, is unable to hold things with his right hand due
to his carpal-tunnel syndrome, and cannot lift overhead due to
his lateral epicondylitis.  Tr. 39.

       The ALJ found Plaintiff's allegations are inconsistent
with his medical records, other evidence in the record, and
Plaintiff's activities of daily living.  Tr. 20-21.  For
example, on October 16, 2017, Plaintiff's knees were tender on
extension, but his x-rays were normal and there was not any
evidence of fracture or dislocation.  Tr. 359, 829.  One week
later Plaintiff experienced pain on extension and palpation of
the inferolateral knee, but there was not any ligamentous
instability and there was normal range of motion.  Tr. 370.  In
September 2018 an MRI of Plaintiff's knees showed degenerative
fraying of the lateral meniscus, but only mild degenerative
changes.  Tr. 867.  In May 2015 X-rays of Plaintiff's lumbar
spine showed mild-to-moderate degenerative disc disease, but
imaging in October 2017 showed only moderate degenerative
changes.  Tr. 358, 368.  In August 2018 x-rays of Plaintiff's
hip and feet were "unremarkable" and did not show any evidence

of fracture, dislocation, or generative spurring.  Tr. 859.

      In January 2018 Plaintiff began physical therapy for knee and back pain.  Tr. 490.  By June 2018 Plaintiff reported he was "doing well," had improving gait tolerance, was doing "as much activity as possible," and had started a walking program with a cane.  The physical therapist reported Plaintiff "demonstrates improving activity tolerance."  Tr. 653, 740.  In July 2018 Plaintiff reported his pain symptoms were consistent, but the therapist noted Plaintiff's function had improved and he was consistently walking.  Tr. 755.

      An MRI of Plaintiff's knees in September 2018 showed degenerative changes of his right knee, extensive tearing of the medial and lateral menisci, and possible rupture of the anterior cruciate ligament (ACL) of his left knee.  Tr. 867, 876-77.  Although Plaintiff testified at the hearing before the ALJ in September 2018 that he was scheduled to see his doctor regarding possible surgery, there was not any evidence of further treatment by the time of the ALJ's decision in December 2018.

      The ALJ also noted Plaintiff's allegations were inconsistent with his activities of daily living.  Tr. 21.  For example, Plaintiff reported he was engaging in activities that involved sitting, including watching television for most of the

day and playing board games.  Tr. 244, 247.  Plaintiff also
stated he did laundry, prepared his own meals, cleaned the
house, and made his bed.  Tr. 245-46.

On this record the Court finds the ALJ did not err
when he discounted Plaintiff's subjective symptom testimony
because the ALJ provided legally sufficient reasons supported by
substantial evidence in the record for doing so.

## II.  The ALJ properly considered the opinions of Drs. Kehrli and Basham and properly discounted the opinion of Dr. Clinton.

Plaintiff contends the ALJ erred when he improperly
considered the opinions of Drs. Kehrli and Basham, state agency
nonexamining physicians, and failed to provide legally
sufficient reasons for rejecting the medical opinion of
Dr. Clinton, Plaintiff's treating physician.

### A.  Standards

The Court notes the regulations regarding evaluation
of medical evidence have been amended and several of the prior
Social Security Rulings, including SSR 96-2p, have been
rescinded for claims protectively filed after March 27, 2017.
The new regulations provide the Commissioner "will no longer
give any specific evidentiary weight to medical opinions; this
includes giving controlling weight to any medical opinion."
*Revisions to Rules Regarding the Evaluation of Medical Evidence*

(*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844, at

5867-68 (Jan. 18, 2017).  *See* 20 C.F.R. §§ 404.1520c(a),

416.920c(a).  Instead the Commissioner must consider all medical

opinions and "evaluate their persuasiveness" based on

"supportability" and "consistency" using the factors specified

in the regulations.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

These factors include "supportability," "consistency,"

"relationship with the claimant," "specialization," and "other

factors."  *Id.*  Supportability and consistency are considered

the most important factors in the evaluation process.  *Id.*  *See*

*also Revisions to Rules*, 82 Fed. Reg. 5844.

        In addition, the Regulations change the way the

Commissioner should articulate his consideration of medical

opinions.

> First, we will articulate our consideration of
> medical opinions from all medical sources
> regardless of whether the medical source is an
> AMS [Acceptable Medical Source].  Second, we will
> always discuss the factors of supportability and
> consistency because those are the most important
> factors.  Generally, we are not required to
> articulate how we considered the other factors
> set forth in our rules.  However, when we find
> that two or more medical opinions . . . about the
> same issue are equally well-supported and
> consistent with the record but are not exactly
> the same, we will articulate how we considered
> the other most persuasive factors.  Third, we
> added guidance about when articulating our
> consideration of the other factors is required or

discretionary.  Fourth, we will discuss how
persuasive we find a medical opinion instead of
giving a specific weight to it.  Finally, we
will discuss how we consider all of a medical
source's medical opinions together instead of
individually.

*Revisions to Rules*, 82 Fed. Reg. 5844.

Although the Regulations eliminate the "physician

hierarchy," deference to specific medical opinions, and

assigning "weight" to a medical opinion, the ALJ must still

"articulate how [the ALJ] considered the medical opinions" and

"how persuasive [the ALJ] find[s] all of the medical opinions."

20 C.F.R. §§ 404.1520c(a),(b)(1); 416.920c(a),(b)(1).  The ALJ

is required to "explain how [the ALJ] considered the

supportability and consistency factors" for a medical opinion.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Accordingly, the

court evaluates whether the ALJ properly considered the factors

set forth in the Regulations to determine the persuasiveness of

a medical opinion.

**B.    Analysis**

**1.    Drs. Kehrli and Basham**

On November 23, 2016, Dr. Kehrli reviewed Plaintiff's

medical record for Disability Determination Services (DDS).

Tr. 119-22.  Dr. Kehrli opined Plaintiff is capable of light

work, can stand and/or walk for four hours in a normal workday,

16 - OPINION AND ORDER

can sit for six hours in a normal workday, can occasionally use
his left foot for foot-control operations, requires occasional
postural limitations, can reach overhead, and can frequently
handle and finger.  Tr. 120-21.  On March 7, 2017, Dr. Basham,
who also reviewed Plaintiff's medical records for DDS, opined
Plaintiff could stand and/or walk for six hours in a normal
workday and did not have any manipulative limitations.
Tr. 131-33.

     The ALJ gave the opinions of Drs. Kehrli and Basham
"some weight."  Tr. 19.  The ALJ, however, assessed Plaintiff
with additional limitations, including a requirement to
alternate between sitting and standing for five minutes every 30
minutes, based on Plaintiff's complaints of pain and the recent
imaging of his knees.  Tr. 19, 22.

     At the hearing the VE identified three jobs at the
light-exertional level that Plaintiff could perform and that
existed in the national economy in sufficient numbers:  mail
clerk, officer helper, and parking-lot attendant.  Tr. 44-47.

     Plaintiff contends the ALJ erred when he failed to
include a limitation for standing and/or walking for no more
than four hours, did not include any limitation for Plaintiff's
left hand, and failed to provide adequate reasons for rejecting

these limitations.

The ALJ, however, did not explicitly reject the opinions of Drs. Kehrli and Basham, but, in fact, assessed greater limitations, including a sit/stand requirement. Dr. Kehrli opined Plaintiff was limited to frequent handling and fingering to avoid recurrence of Plaintiff's carpal-tunnel syndrome (Tr. 1210), and the ALJ also limited Plaintiff to frequent handling with his right hand, Plaintiff's dominant hand.  Tr. 19, 45.

On this record the Court concludes the ALJ did not err in his evaluation of the opinions of Drs. Kehrli and Basham because he provided adequate reasons for his evaluation.  In fact, the ALJ imposed limitations greater than those assessed by either reviewing physician based on his reasonable interpretation of the record as a whole.

### 2.  Dr. Clinton

On August 28, 2018, Dr. Clinton, Plaintiff's treating physician, completed a Medical Source Statement regarding Plaintiff's condition.  Tr. 775-78.  Dr. Clinton indicated Plaintiff's medical conditions were degenerative disc disease of the lumbar spine and chronic knee pain.  Tr. 775.  Dr. Clinton stated Plaintiff can occasionally lift/carry ten pound; can

frequently lift/carry less than ten pounds; can stand and/or
walk for only five minutes at one time; can stand and/or walk
for less than two hours in an eight-hour workday; can only sit
for only 15 minutes at one time; can sit for less than two hours
in an eight-hour workday; can only occasionally balance; and
cannot climb, stoop/bend, kneel, crouch, or crawl.  Tr. 776.
She also indicated Plaintiff can "constantly" feel and can
frequently reach overhead with his left arm, handle, and finger.
Tr. 776.  Dr. Clinton opined Plaintiff would miss 16 hours of
work per month due to frequent pain.  Tr. 777.

        The ALJ gave Dr. Clinton's opinion "little weight" on
the ground that Plaintiff's activities suggested he was able to
function "quite well."  Tr. 21.

        Plaintiff asserts he is required to use a cane;
injections to his knees give only temporary relief; and he
continues to experience dislocations of his knees, which puts
him at risk of falling.  Plaintiff also contends the ALJ failed
to consider his hand and arm impairments.

        In addition, Plaintiff contends the ALJ's assessment
of Plaintiff's activities do not undermine Dr. Clinton's
opinion.  The ALJ, however, relied on other evidence in the
record to discount Dr. Clinton's opinion.  For example,

19 - OPINION AND ORDER

Drs. Kehrli and Basham concluded Plaintiff was able to perform
light work.  The ALJ found their opinions were based on a review
of all of Plaintiff's medical records, which contained findings
not relied on by Dr. Clinton.  Tr. 117-18, 129-30.  As noted,
the contrary opinions of examining or nonexamining physicians
constitutes specific and legitimate reasons for discounting the
opinions of treating physicians.  *Tonapetyan v. Halter*, 242 F.3d
1144, 1149 (9th Cir. 2001).  As noted, the ALJ also found x-rays
taken in October 2017 showed only moderate degenerative changes
to Plaintiff's lumbar spine, and the x-rays showed Plaintiff's
knees were normal.  Tr. 359, 839.  In fact, Dr. Clinton
recommended only weight loss, physical therapy, and steroid
injections after reviewing Plaintiff's x-rays and performing a
physical examination of Plaintiff.  Tr. 370-71.  Moreover, even
though Dr. Clinton opined in her August 2018 opinion that
Plaintiff could stand or walk for only five minutes, in October
2017 she recommended Plaintiff "get back to walking" to help
with his back and knee pain.  In April 2018 she also instructed
Plaintiff to "do gardening and walk for exercise."  Tr. 367,
382.  There is not any evidence that Dr. Clinton conducted an
examination of Plaintiff between October 2017 and her August
2018 opinion.  Although imaging in September 2018 showed a

20 - OPINION AND ORDER

worsening of Plaintiff's knees, this was after Dr. Clinton's assessment.

The ALJ also relied on Plaintiff's description of his daily activities.  Plaintiff indicated in his Adult Function Report that he cleans the dishes; makes his bed; and does the laundry, which takes him about an hour.  Tr. 246.  He also goes outside three or four times a day and shops for food one or two times a week for one-to-two hours.  Tr. 246.

On this record the Court concludes the ALJ did not err when he discounted Dr. Clinton's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

### III. The ALJ properly rejected Plaintiff's subjective need for a cane.

Plaintiff contends the ALJ erred when he failed to include a requirement that Plaintiff use a cane in his assessment of Plaintiff's RFC.

#### A.    Standards

In his assessment of a claimant's RFC the ALJ determines the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.920(e).  *See also* SSR 96-8p.

21 - OPINION AND ORDER

**B.    Analysis**

Dr. Clinton and Brandon Mascarenas, Plaintiff's physical therapist, recommended Plaintiff use a walking stick or a cane to help with his knee pain and to avoid the risk of falling.  Tr. 367, 571.

The ALJ noted these recommendations, but he did not include any requirement for the use of a cane in his assessment of Plaintiff's RFC.  Tr. 19-21.  The ALJ, however, included a sit/stand option in his assessment of Plaintiff's RFC and in his hypothetical question posed to the VE.  Tr. 19, 44-45, 47.

The Commissioner argues the use of a cane is irrelevant because it was not prescribed by any medical provider and the VE testified Plaintiff would not have to stand or to walk to perform the duties of parking-lot attendant.  The Commissioner points to *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002), to support his argument.

In *Thomas* the Ninth Circuit concluded the ALJ was not required to include the use of a wheelchair or a cane in his hypothetical to the VE when (1) there was not any objective medical evidence to establish that the claimant required such devices, (2) the ALJ correctly discounted the claimant's testimony regarding her pain, and (3)the ALJ included a sitting

option in his assessment of the claimant's RFC.  278 F.3d at

959.  Here the ALJ included a sit/stand option in his evaluation

of Plaintiff's RFC and in his hypothetical to the VE.  Tr. 19,

44-45, 47.  Although Plaintiff's medical provider recommended

the use of a walking stick or a cane, there is not any other

evidence that either was required.

Accordingly, the Court concludes on this record the

ALJ did not err when he did not include in his evaluation of

Plaintiff's RFC a requirement that Plaintiff use a cane.


## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of November, 2020.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge


23 - OPINION AND ORDER